## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**JOSIE ENID FELICIANO,**

      **Plaintiff,**

**v.**                                                                  **Case No: 5:19-cv-428-Oc-18PRL**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

_____

### REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED.**

**I.**      **BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> On October 5, 2015, Plaintiff protectively filed an application for a period of disability and DIB, alleging an onset date of August 21, 2015. (Tr. 283-89). The Commissioner denied these applications in initial and reconsideration determinations (Tr. 108-11, 117-23). After a hearing, the ALJ found Plaintiff not disabled in a decision issued in September 2018 (Tr. 15-36, 37-81). The Appeals Council denied Plaintiff's request for review of the ALJ decision (Tr. 1-8). The Commissioner's final decision is now subject to judicial review. See 42 U.S.C. § 405(g).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

(Doc. 22, pp. 1-2).

Plaintiff was 47 years old on the date of the ALJ's decision. (Tr. 15, 283). Plaintiff is not literate in English and has past relevant work as a cashier/checker II and department manager. (Tr. 325, 327). Based on a review of the record, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease with cervical and lumbar muscle spasms, osteoarthritis, obesity, anemia, irritable bowel disorder with gastritis, sleep apnea, hypothyroidism, hypertension, bilateral carpal tunnel syndrome, depression, anxiety and panic disorder. (Tr. 24).

The ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. The ALJ found:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she can lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently, stand and walk for about 6 hours, and sit for up to 6 hours in an 8-hour day; she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but must never climb ladders, ropes, or scaffolds; handling, defined as gross manipulation, can be performed at most frequently; she must avoid concentrated use of moving machinery and exposure to unprotected heights; and she is limited to performing simple, routine, and repetitive tasks.

(Tr. 28).

Based on the RFC, and relying upon the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, such as the representative jobs of housekeeper cleaner, routing clerk, and cafeteria attendant. (Tr. 30).

## II.  STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III.   DISCUSSION

Plaintiff raises five issues on appeal: (1) whether the ALJ properly relied on testimony from the vocational expert; (2) whether the ALJ erred in finding that Plaintiff could perform the jobs of housekeeping cleaner, routing clerk, and cafeteria attendant, given apparent inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles; (3) whether the ALJ erred in failing to have the complete medical record translated; (4) whether the ALJ erred in failing to find Plaintiff limited to sedentary work and thereby evading the grids given that Plaintiff was illiterate in English; and (5) whether Plaintiff was entitled to a hearing by an ALJ who had been constitutionally appointed.

### A.   The ALJ'S Consideration of the Vocational Expert's Testimony

Plaintiff first argues that the ALJ erred in relying on the testimony of the vocational expert. Plaintiff contends that the ALJ erred in finding that a substantial number of jobs exist that Plaintiff could perform, given that the vocational expert provided job numbers that pertain to an entire occupational employment survey grouping rather than to individual job titles. Plaintiff further contends that the ALJ failed to adjust those numbers for manipulative limitations, included part-time jobs in the determination, and, relatedly, underestimated the number housekeeping cleaner and cafeteria attendant jobs that are part-time.

More specifically, Plaintiff argues that the source of the vocational expert's job numbers (U.S. Publishing) did not break down the job numbers by individual DOT title, and that they do not reflect the limitation in the RFC to frequent gross manipulation. Plaintiff further contends that the numbers of housekeeping cleaner jobs provided included about 15 to 20 percent part time jobs, which should not be included to determine whether a substantial number of jobs exist that Plaintiff could perform. Plaintiff also takes issue with the vocational expert's estimate of the number of

part-time jobs and contends that U.S. Department of Labor figures show that about 48% of housekeeping cleaner jobs are part-time, 15% of routing clerk jobs are part-time, and 72% of cafeteria attendant jobs are part-time.

As an initial matter, the inquiry here "is not whether the expert's <u>testimony</u> is supported by substantial evidence. It is whether the ALJ's <u>decision</u> is supported by substantial evidence." *See Pace v. Comm'r of Soc. Sec.,* 760 F. App'x 779, 2019 WL 178422, at * (11th Cir. Jan. 14, 2019)) (citations omitted) (emphasis in original). Indeed, the fact that job number data presented by Plaintiff might support an alternative finding is not itself determinative. This Court's job is not to reweigh the evidence; rather, it must affirm if substantial evidence supports the ALJ's decision even if the evidence was susceptible to more than one interpretation. *See Davis v Berryhill*, 2018 WL 2208432, at *7 (S.D. Ala. May 14, 2018). Further, the Eleventh Circuit "has not placed an affirmative duty on the ALJ to independently investigate the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES," which (as the court noted) are not part of the Social Security Administration's regulatory scheme. *Webster v. Comm'r Soc. Sec.*, 2019 WL 2151708, *2 (11th Cir. 2019).

And, as Defendant argues, even assuming that Plaintiff's argument has merit, reliance on vocational expert testimony about inflated job numbers would be harmless error where even a reduced number would still amount to a significant number of jobs. Notably, Plaintiff does not contend that calculating more accurate job numbers would constitute less than a significant number of jobs in the national economy. Indeed, a vocational expert's testimony can constitute substantial evidence, even absent detailed reports or statistics supporting the testimony. *Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402-03 (11th Cir. 2012) (explaining "the ALJ was entitled to rely upon the VE's testimony without requiring the VE to provide a comprehensive statistical

explanation of how he arrived at the reduced job number figures" and holding the testimony constituted substantial evidence).

And, here, the testimony from the hearing reflects that the ALJ posed a hypothetical question regarding an individual with Plaintiff's RFC and whether there were unskilled jobs in the national economy that such a hypothetical person could perform. (Tr. 74). The vocational expert replied by identifying the representative jobs and the national numbers, all of which were well over 70,000. (Tr. 74). The number of jobs in the national economy for the three positions identified by the VE collectively exceed 500,000, and are individually significant, even if reduced as Plaintiff argues: cleaner, housekeeping 371,379; routing clerk 74,788; and cafeteria attendant 73,085). (Tr. 74) Later, the vocational expert was examined by Plaintiff's counsel, who inquired about the source of the job numbers and whether they included part-time numbers. (Tr. 78). It is apparent that the ALJ's ultimate finding regarding job numbers took all of this into account, including the possibility of imprecise or inflated figures. As the ALJ plainly concluded, even if the national numbers cited by the vocational expert were overestimated, the vocational expert's testimony nonetheless constituted substantial evidence that those jobs exist in significant numbers in the national economy.

Indeed, an ALJ may properly rely on an "approximate percentage" of jobs to which the VE testifies. *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012). Further, the Eleventh Circuit has "never held a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant number' under the statute and regulations . . . however . . . the 'appropriate focus under the regulation is the national economy.'" *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934–35 (11th Cir. 2015) (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir.1987)). For example, in *Atha*, the court found that even 3,200 available jobs in the

national economy is a significant number of jobs and that the ALJ's decision was supported by substantial evidence. 616 F. App'x at 935. Thus, even assuming that the job numbers stated by the vocational expert were overestimated, the testimony (which included the vocational expert's overall credentials and experience) still constitutes substantial evidence upon which the ALJ could rely.

Reversing and remanding this case to arrive at a different figure for the number of jobs would result in the same ultimate determination that Plaintiff is not disabled. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (declining to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision"). Because the ALJ identified work available in significant numbers in the national economy that the Plaintiff can perform, there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled. The ALJ did not err when relying on the vocational expert's testimony regarding national job numbers.

**B.  The ALJ's Finding Regarding the Jobs of Routing Clerk and Cafeteria Attendant**

Plaintiff next argues that the ALJ erred in finding that Plaintiff could perform the jobs of cafeteria attendant and routing clerk because these two jobs require the ability to carry out detailed instructions and Plaintiff's RFC was limited to simple tasks. Plaintiff argues that the ALJ did not resolve the apparent inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles descriptions of these two jobs.

As Defendant argues, however, the Court need not reach this issue because Plaintiff failed to challenge the third job identified by the vocational expert, housekeeping cleaner, with respect to reasoning level. Indeed, identification of the housekeeping cleaner job alone is sufficient to

satisfy the Commissioner's step-give burden. *See, e.g., Hwang v. Berryhill*, No. 8:18-CV-1096-T-27AEP, 2019 WL 2526719, at *7 (M.D. Fla. May 7, 2019) (recommending affirming the Commissioner's decision, including the ALJ's determination that there were significant numbers of housekeeping cleaner jobs in the national economy based upon vocational expert's testimony that 124,00 such jobs existed in the national economy). As observed above, Plaintiff does not contend that there is an insignificant number of housekeeping cleaner jobs in the national economy.

And, in any event, the Eleventh Circuit has held that there is no conflict between a limitation to simple, routine, repetitive tasks and reasoning level 1 jobs. *See, e.g., Chambers v. Comm'r of Soc.* Sec., 662 F. App'x 869, 873 (11th Cir. 2016). Here, the ALJ established substantial evidence that occupations existed in the national economy that Plaintiff could perform by asking the vocational expert a hypothetical question that set out all of Plaintiff's impairments. The ALJ asked the vocational expert whether any jobs existed in the national economy that a hypothetical person could perform assuming Plaintiff's age, education, work experience, RFC, and other limitations. (Tr. 73-74). The vocational expert testified that such an individual could perform unskilled, light jobs, including housekeeping cleaner. (Tr. 74).

The vocational expert's testimony is substantial evidence upon which the ALJ could rely. Notably, Plaintiff has not demonstrated that she is unable to perform the jobs identified by the vocational expert, including the housekeeping cleaner job. The ALJ did not err in making the step-five findings.

### C.  The ALJ's Development of the Record

Next, Plaintiff argues that the ALJ erred in failing to have the complete medical record translated into English. Plaintiff cites the ALJ's statement during the hearing that "the agency kind of fouled up there, all of those pages should've been translated into English prior to this hearing."

(Tr. 47). The ALJ explained that he would get documents translated and then determine if another hearing was needed. (Tr. 48). Ultimately, however, the ALJ had additional (but not all) medical records translated, and did not hold another hearing. Plaintiff particularly complains about the failure to translate several evaluations of Dr. Mues Sanchez dating between August 2014 and December 2015. Plaintiff argues that the ALJ failed to meet his obligation to develop the record.

The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110–111 (2000), *Crawford & Co. v. Apfel*, 235 F.3d 1298 (11th Cir.2000), and is informal. *Richardson v. Perales*, 402 U.S. 389, 400–401 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir.1993); 20 C.F.R. § 404.900(b). With informality comes a duty to develop a complete record. *Kendrick*, 998 F.2d at 456. It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir.1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir.1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). The duty to develop the record exists even though the plaintiff is represented. *Brown*, 44 F.3d at 934; *Smith*, 792 F.2d at 1551 (citing *Cowart,* 662 F.2d at 735). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Co.*, supra, 235 F.3d at 1304.

These principles do not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence. Rather, he must have sufficient evidence to decide the case. Noteworthy cases in this circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B Oct.15, 1981) and *Reeves*

*v. Heckler*, 734 F.2d 519 (11th Cir.1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision. Where an ALJ has sufficient information to decide the case, however, the ALJ can do so. *See Graham v. Apfel*, 129 F.3d 1420,1423 (11th Cir.1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made). Moreover, "[t]he claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir.2003); 20 C.F.R. § 416.912(a), (c).

Thus, the question here is whether the ALJ had sufficient evidence to decide the case. Notably, Plaintiff has not identified any prejudice resulting from the ALJ's failure to have every single document translated. Moreover, Plaintiff is not *pro se*. She was represented by an attorney at the hearing and is currently represented. *See Sullivan v. Comm'r of Soc. Sec*., No. 16-16896, 2017 WL 2257332, at *1 (11th Cir. May 23, 2017). In light of that fact, it is notable that neither Plaintiff nor her attorney has identified any particular gap in the evidence or specific way that the failure to get documents translated caused prejudice.

The undersigned agrees with Defendant that Plaintiff has not met her burden of demonstrating any prejudice resulting from a failure to develop the record. *See Henry*, 802 F.3d at 1267; *Ellison*, 355 F.3d at 1276.

### D.  The ALJ's Use of the Medical-Vocational Guidelines

Plaintiff's next argument on appeal is that the ALJ erred in failing to find Plaintiff limited to sedentary work, thereby evading the Medical-Vocational Guidelines ("Grids"), given that Plaintiff was illiterate in English. Plaintiff contends that because Plaintiff is illiterate in English, if she were limited to sedentary work, she would have been found disabled pursuant to Medical-

Vocational Rule 201.17. Plaintiff argues that the ALJ erred in failing to find her limited to sedentary work because she suffered from severe impairments of fibromyalgia, degenerative disc disease with cervical and lumbar muscle spasms, osteoarthritis and obesity which limited her to sedentary work.

So ultimately, Plaintiff takes issue with the ALJ's RFC finding that Plaintiff could do light work with some restrictions. Plaintiff cites her diagnoses of fibromyalgia, degenerative disc disease with cervical and lumbar muscle spasms, osteoarthritis, and obesity and contends that together these severe impairments limited her to no more than sedentary work. Plaintiff also cites the findings of Joseph Javier, D.P.T., although she does not contend that he is a treating source or even an acceptable medical source under § 404.1502. Plaintiff argues that due to these diagnoses and the limitations opined by Joseph Javier, D.P.T., Plaintiff was limited to no more than sedentary work, and that the ALJ erred by finding Plaintiff capable of light work.

A review of the record, however, and the ALJ's decision reveals that the RFC finding is indeed supported by substantial evidence. In finding Plaintiff capable of light work with some restrictions, the ALJ relied upon the opinion of state agency physician Dr. Larry Meade who opined that Plaintiff was capable of a range of light work. (Tr. 28, 101-03). The ALJ also considered the substantially similar opinion of Dr. Rodriguez. (Tr. 29-30). In addition, the ALJ considered the opinion of Dr. Hernandez, but gave it only little weight because it was inconsistent with other evidence. It is evident that the ALJ considered the record evidence as whole, as he reached an RFC finding that takes into account limitations even greater than those opined by Dr. Meade due to considerations such as Plaintiff's obesity and medications. (Tr. 29-30). All of these considerations were expressly discussed by the ALJ in his decision regarding the RFC finding. (Tr. 29-30).

Because the RFC finding was supported by substantial evidence, the ALJ did not err in finding Plaintiff capable of a range of light work and, consequently, determining that the Medical-Vocational Guidelines were not applicable.

### E.  Plaintiff's Contention Regarding the Appointments Clause

Finally, Plaintiff argues that at the time the ALJ held the hearing in this case, he was not properly appointed under the Constitution's Appointments Clause and thus did not have legal authority to preside over this matter, citing *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018).

Plaintiff, however, forfeited this issue when she did not raise it at the prior administrative proceedings. *See Lucia*, 138 S. Ct. at 2055 (noting that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief") (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). Plaintiff does not dispute that she did not raise the issue previously. (Doc. 20, p. 20). As Defendant argues, Plaintiff failed to raise the issue that ALJs are inferior officers under the Appointments Clause in the prior proceedings, including in her application for benefits, on reconsideration, at her hearing, and before the Appeals Council.

The vast majority of courts that have considered the issue of forfeiture have concluded that a plaintiff/appellant forfeits an Appointment Clause challenge to an ALJ's decision by failing to raise it before the Commissioner. *See, e.g.*, *Burr v. Comm. Soc. Sec.*, Case No: 5:18-cv-518-Oc-18PRL, 2019 WL 3821572 (M.D. Fla. May 17, 2019) *report and recommendations adopted by* 2019 WL 3817486 (M.D. Fla. Aug. 14, 2019); *Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 476 (E.D. Pa. 2019); *Martin v. Berryhill*, 1:18-cv-115, ECF Doc. 17, slip op at 10–11 (M.D. N.C. Dec. 11, 2018) *report and recommendations adopted by* ECF Doc. 19 (M.D.N.C. Jan. 4, 2019). Courts

have also decided the issue the other way, however. *See Culclasure v. Comm'r of Soc. Sec.*, 375 F. Supp. 3d 559 (E.D. Pa. 2019).

Generally, a party seeking to challenge the appointment of the official deciding his case must raise the issue "while his case was pending before that court on direct review." *Ryder v. United States*, 515 U.S. 177, 180–82 (1995). Appointments Clause challenges are "non-jurisdictional" and, thus, subject to waiver or forfeiture if not raised in a timely manner. *See Freytag v. Comm'r of Internal Rev.*, 501 U.S. 868, 878 (1991). The court does, however, have discretion to entertain such challenges in the "rare case." *Id.*; *see also In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) ("The Supreme Court has never indicated that [Appointments Clause] challenges must be heard regardless of waiver."). This case does not present a situation where exercising that discretion would be appropriate.

First, Plaintiff has not shown that she was prevented from raising the issue before the Commissioner. The *Lucia* opinion is itself a straightforward application of the principles of the Court's earlier decision in *Freytag*. *See* 138 S. Ct. at 2053 ("*Freytag* says everything necessary to decide this case."). *Lucia* created no new constitutional rules or standards—it simply applied the same standards to a different agency. Although Plaintiff notes a striking difference between plaintiffs in social security proceedings ("extremely poor and sick disability claimants who are often unrepresented") and the *Lucia* plaintiff ("wealthy investor . . . represented by high-powered securities attorneys during the administrative proceedings in his case"), these differences do not change the application of the principles in *Freytag*. (Doc. 20, p. 21). Indeed, the plaintiff in *Lucia* faced fundamentally the same situation as Plaintiff here but elected to press his argument before the SEC, giving the Commission an opportunity to address the argument. *Cf. Hill v. SEC*, 825 F.3d 1236, 1243 (11th Cir. 2016) (holding that Appointment Clause challenge to SEC ALJ was

"essentially [an] objection to forthcoming Commission orders" and thus had to be first presented to the Commission). Moreover, although Plaintiff classified social security claimants as "often unrepresented," she actually was represented during the administrative proceedings in this case, and still did not raise the issue until this appeal. (Doc. 20, p. 21).

Next, Plaintiff claims that the ALJ and Appeals Council lack the power to adjudicate a constitutional claim, so she should not be barred from raising it for the first time in this Court. However, there are still good reasons to require Plaintiff to exhaust her remedies in front of the agency. *See United States v. L.A. Trucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has the opportunity for correction in order to raise issues reviewable by the courts."). The fact that the issue may not have been resolved in front of the agency is not good reason to excuse the exhaustion requirement.

In addition, several social security regulations specify that issues should be presented to the ALJ or Appeals Council at the "earliest possible opportunity." 20 C.F.R. §§ 404.939, 404.940, 404.946, 416.1439, 416.1440. The regulations also specify that the Appeals Council will review a case if there is "a broad policy procedural issue that may affect the general public interest." 20 C.F.R. § 404.970(a)(4). Plaintiff has failed to provide a convincing rationale for excusing her failure to comply with these requirements. *See Weinberger v. Salfi*, 422 U.S. 749, 764–66 (1975) (holding that the denial of a constitutional challenge to a social security claim is "nonetheless a decision of the Secretary" suitable for judicial review).

Plaintiff relies heavily on *Sims v. Apfel*, 530 U.S. 103 (2000) to argue that she has not forfeited this issue. In *Sims*, the Court held that exhaustion before the Appeals Council was

unnecessary to preserve a claim for review, although the Court specifically reserved the question whether "a claimant must exhaust issues before the ALJ." 530 U.S. at 2083.

But *Sims* applied specifically to Appeals Council's procedure for reviewing claims and the ambiguous notice provided to claimants about the nature of its review. *See id*. at 112–114 (O'Connor, J., concurring) (noting that "the relevant regulations and procedures indicate that issue exhaustion before the Appeals Council is not required"). Circuit Courts interpreting *Sims* have not extended its rationale to excuse the failure to raise an issue before the ALJ. *See, e.g.*, *Shalibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (declining to extend *Sims* to issue not raised before the ALJ). While *Sims* relied heavily on the non-adversarial nature of Social Security proceedings as it relates to evaluating a specific claim, this aspect of the process is less pronounced with regards to the Appointments Clause issue. *See Fortin v. Comm'r Soc. Sec.*, 372 F. Supp. 3d 558, 565 (E.D. Mich. 2019) ("[W]here the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges.").

It is also persuasive, as Defendant argues, that the vast majority of district courts outside of the Third Circuit have agreed with the Commissioner's position. Defendant points out that, following *Lucia*, 54 out of 58 district courts outside of the Third Circuit have rejected Appointments Clause challenges to Social Security Administration ALJs where the plaintiff failed to raise the issue during the administrative proceedings. Defendant has provided an exhaustive list of the relevant cases in its brief. (Doc. 22, p. 26 n. 13). The weight of authority, as well as the policy reasons cited by Defendant, dictate a finding that Plaintiff has forfeited the Appointments Clause issue by not raising it before the ALJ.

Upon review, the ALJ's decision should be affirmed because substantial evidence supports the ALJ's findings regarding Plaintiff's condition, his RFC, and his limitations. *See Miles v.*

*Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

### IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

Recommended in Ocala, Florida on September 3, 2020.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy